Marcia Hofmann (SBN 250087)
ZEITGEIST LAW PC
25 Taylor St.
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

Counsel for Plaintiff CORA CURRIER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CORA CURRIER,<br><br>  Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF STATE, DEPARTMENT OF JUSTICE, and DEPARTMENT OF DEFENSE,<br><br>  Defendants. | Case No. 3:17-cv-01799-JSC<br><br>JOINT STATUS REPORT<br><br>Date: September 7, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom F, 15th Floor<br>Magistrate Judge Jacqueline Scott Corley |

Plaintiff Cora Currier and Defendants—the Department of State (DOS), the Department of Justice (DOJ), the Department of Defense (DOD), and the Department of Homeland Security (DHS)—respectfully submit this Joint Status Report pursuant to the Court's Minute Order of September 7, 2017 [ECF No. 31].[1]

1.  This case arises from multiple Freedom of Information Act (FOIA) requests submitted by Plaintiff, dated February 1, 2017, and April 3, 2017. The requests seek records from the four defendant agencies, including from multiple offices and/or sub-agencies within them.

2.  On August 24, 2017, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. The Court denied the Motion for Preliminary Injunction; instructed the parties to meet and confer regarding the processing of Plaintiff's FOIA requests; ordered the parties to file a Joint Status

---

[1] The components of DOJ and DHS that are processing Plaintiff's requests are: (1) the Executive Office for United States Attorneys ("EOUSA"); (2) the Federal Bureau of Investigation ("FBI"); (3) the Office of Legal Counsel ("OLC"); (4) the Office of Information Privacy ("OIP"); (5) the U.S. Marshals Service ("USMS"); (6) the DHS Privacy Office ("DHS-PRIV"); (7) U.S. Customs and Border Protection ("CBP"); and (8) DHS's Office of the Inspector General ("DHS-OIG").

JOINT STATUS REPORT, Case No. 3:17-CV-01799-JSC - Page 1

Report by September 6, 2017; and set a status hearing for September 7, 2017.

3. At the status hearing on September 7, 2017, the parties updated the Court on developments since the hearing on Plaintiff's Motion for Preliminary Injunction. Plaintiff requested that the Court require the agencies to process a minimum number of pages per month. The Court declined to do so at that time and indicated that the Court would continue to monitor the agencies' progress through periodic status reports and status conferences. The Court scheduled the next status conference for September 28, 2017, and ordered the parties to file another joint status report by September 27, 2017.

**Discussions Between the Parties Since the Last Status Conference**

4. As instructed, counsel for the parties have continued to confer regarding potential approaches to narrowing, clarifying, and/or prioritizing Plaintiff's FOIA requests. These discussions recently yielded several agreements, some of which apply to all of the outstanding requests and some of which are agency-specific.

5. Written correspondence memorializing counsel's discussions and the parties' agreements is attached hereto.

6. The parties expect to continue their discussions after the upcoming status hearing. In addition, the agencies that are still processing Plaintiff's requests intend to evaluate how the parties' scoping agreements will affect the volume of records requiring further manual review and processing. Because the parties reached these agreements only this week, the agencies have not yet been able to undertake that analysis.

**Production Updates and Status**

7. <u>DOJ-FBI</u>: The FBI has now completed its processing of Plaintiff's FOIA request. On September 25, 2017, the agency advised Plaintiff that it would withhold in full the seven pages of responsive records that required interagency review, invoking FOIA Exemptions 1, 3, 5, 6, 7C, and 7E.

8. <u>DOJ-EOUSA</u>: Interagency review of records from EOUSA remains ongoing. These records require review by multiple agencies; EOUSA has received responses from some and is waiting for responses from others.

9. <u>DOJ-OLC</u>: In the last joint status report, OLC indicated that it anticipated completing its initial manual responsiveness review of the potentially responsive records that it has not already released

to Plaintiff by the end of September 2017. That review has proceeded on schedule and is nearly complete, and OLC intends to report on the results in the next joint status report. As indicated in the last joint status report, OLC also anticipates beginning rolling productions of the remaining records in October 2017. OLC now commits to making rolling releases on approximately a monthly basis thereafter.

10. <u>DOJ-OIP</u>: Since the last status conference, OIP released 134 pages in full or in part on September 21, 2017. OIP plans to make additional rolling releases on approximately a monthly basis going forward. OIP also is actively reviewing records received from other agencies in response to requests for interagency review.

11. <u>DOD</u>: DOD is making rolling releases on approximately a monthly basis. DOD anticipates making its next release next week.

12. <u>DOS</u>: DOS is making rolling releases on approximately a monthly basis. Since the last status conference, DOS made a release on September 8, 2017. For that release, DOS processed over 300 pages, which resulted in 20 pages being released in full or in part.

13. <u>DHS-PRIV</u>: Since the last status conference, DHS-PRIV made a release on September 11, 2017. For that release, DHS-PRIV reviewed 502 pages, resulting in 71 pages being released in full, 108 pages being released in part, 17 pages being withheld in full, and 277 pages being deemed duplicative or non-responsive. DHS-PRIV also sent 29 pages of records to other agencies for interagency review. DHS-PRIV commits to making rolling releases on approximately a monthly basis going forward.

14. <u>DHS-CBP</u>: Since the last status report, CBP made a release on September 15, 2017, releasing 115 pages in full or in part and withholding 118 pages in full. CBP also re-released one page in full that it had previously released in part. CBP commits to making rolling productions on approximately a monthly basis going forward. In addition, CBP reports that it recently obtained access to a new document-review platform for use in responding to Plaintiff's FOIA requests and other FOIA requests involving the same general subject matter. CBP anticipates that the new platform will allow for more efficient processing of records and will facilitate coordination across cases by reducing duplication of effort. Agency personnel are being trained on how to use the new platform.

15. The status for DOJ-USMS and DHS-OIG remains unchanged from the filing of Defendants' brief on August 10, 2017.

**Other Information**

16. At the August 24 hearing on Plaintiff's Motion for Preliminary Injunction and the September 7 status conference, the Court recommended that agencies with multiple pending FOIA requests involving the same general subject matter take steps to coordinate their processing of the relevant FOIA requests in order to enable more requesters to receive records responsive to their FOIA requests sooner.

17. Agencies have been working to coordinate their processing of the related FOIA requests in this manner, with the approach taken by each agency varying somewhat depending on the number of FOIA requests at issue and the extent to which the requests overlap. CBP, for example, has the most cases in litigation; it has been prioritizing records responsive to multiple requests and releasing the overlapping records to multiple requesters at or about the same time; it also has constructed its searches to take account of other related records requests, to avoid duplication of effort by searching for the same records multiple times. OLC has several cases in litigation; it has asked other plaintiffs to narrow their requests in the same manner that it has asked Plaintiff to do so, and vice versa. Other agencies, including agencies with other pending requests that are not yet in litigation, have adopted similar strategies to make their searching and processing of records more efficient overall.

//
//
//
//
//
//
//
//
//
//

Date: September 27, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIAN STRETCH
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Matthew J. Berns*
MATTHEW J. BERNS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
(202) 616-8016
(202) 616-8470 (Fax)
Matthew.J.Berns@usdoj.gov

*Counsel for Defendants*


*/s/ Marcia Hofmann*
Marcia Hofmann
ZEITGEIST LAW PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

*Counsel for Plaintiff Cora Currier*

**LOCAL RULE 5-1(i) ATTESTATION**

I certify that I have obtained Matthew J. Berns's concurrence in the filing of this document.

                                        */s/ Marcia Hofmann*
                                        Marcia Hofmann



**U.S. Department of Justice**
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530

---

| | |
|---|---|
| Matthew J. Berns | Tel: (202) 616-8016 |
| Trial Attorney | Fax: (202) 616-8470 |
| | Email: matthew.j.berns@usdoj.gov |

September 21, 2017

**VIA E-MAIL**

Marcia Hofmann
Zeitgeist Law PC
25 Taylor Street
San Francisco, CA 94102

  Re: *Currier v. DHS, et al.*, 3:17-cv-1799 (N.D. Cal.)

Dear Marcia,

  I am writing to follow up on Defendants' pending proposals to modify or clarify the scope of Ms. Currier's FOIA requests. We discussed these proposals during our conference call on August 30, 2017. For most of Defendants' proposals, you indicated that you would confer with Ms. Currier and get back to us. We look forward to hearing back from you, as the agencies are working diligently to process the requests and we do not want them to waste time processing records that are not likely to contain releasable information of interest to Ms. Currier, at the expense of records that might.

  The parties' scoping discussions since the preliminary injunction hearing are outlined below for your reference. We have organized the discussion under three headings: (1) the main scoping proposals proposed by Defendants that remain pending; (2) the agreements that were reached or confirmed during our August 30 call; and (3) the scoping and prioritization requests that you made in your emails of August 25 and 31.

**DEFENDANTS' PENDING SCOPING PROPOSALS**

  Before listing Defendants' specific scoping proposals, we want to reiterate the considerations underlying these proposals and why Defendants believe they serve the interests of everyone involved:

- Because multiple agencies located very large volumes of potentially responsive records, Defendants offered proposals intended to improve the ratio between (1) the number of potentially responsive records requiring manual, document-by-document review and (2) the number of records that ultimately will be deemed responsive and contain non-exempt information of interest to Ms. Currier. Bright-line rules for processing the

requests—adopting a narrower date range, limiting the search to specific offices or custodians, or entirely excluding specific offices or custodians—generally will be the most effective way to reduce the universe of potentially responsive records requiring manual, document-by-document review.  Defendants therefore have suggested that the parties agree to bright-line rules that would enable the agencies to deploy their resources more efficiently, complete their processing sooner, and further expedite the release of non-exempt information of greatest interest to Ms. Currier.

- Defendants offered proposals intended to exclude material that is likely to be withheld in full, or nearly so, and for which there is not likely to be any basis for challenging the agency's withholding.  Requiring the agencies to process large volumes of such material will prolong the processing of Ms. Currier's requests and delay the resolution of the litigation, without resulting in more information being disclosed to Ms. Currier.

- Defendants offered proposals intended to better focus the requests on records that we believe are of greatest interest to Ms. Currier.  Of course, Ms. Currier is in a better position to offer narrowing proposals along these lines, so Defendants' invitation for Ms. Currier to limit the scope of her requests remains open.

**I.   Global Proposals**

In light of the considerations mentioned above, we offered the following scoping proposals on behalf of all Defendants and agency components in the litigation.  We recognize, however, that Ms. Currier's responses may not be uniform across agencies.  Ms. Currier could, for example, agree to shorten the date range covered by her request(s) to one agency but not another.

A. *Focus the requests on specific parts of the Executive Orders*.  Defendants would appreciate confirmation of their understanding that Ms. Currier's requests are limited to records concerning the Section of each Executive Order that temporarily suspends entry into the United States of certain persons from certain countries (i.e., Section 3(c) of Executive Order 13769 and Section 2(c) of Executive Order 13780).  This Section appears to be the only part of either Executive Order described in the "Requested Records" section of Ms. Currier's requests and was the subject of Ms. Currier's requests for expedition.  Confirmation on this point would help agencies focus their searching and processing efforts on offices or individuals involved in the analysis and/or implementation of that provision, as opposed to offices or individuals dealing only with other parts of the Executive Orders.

B. *Shorten the timeframes covered by the requests*.  We discussed several ways to approach this issue, depending on how Ms. Currier wants to focus her requests.

1) One option would be to move the cut-off date forward from April 3 to March 6— the date on which Executive Order 13780 was issued—so that the date range would capture the period prior to the issuance of Executive Order 13780.  As an alternative to a March 6 cut-off date, we suggested March 16 (the intended effective date) as a cut-off date, but we believe that the earlier date is more likely

to increase the ratio of responsive to non-responsive records that the agencies have to process.

For reference, the plaintiffs in *James Madison Project v. DOJ*, 17-cv-390 (D.D.C.), recently agreed to move the cut-off date for their request to OLC to March 6. The cut-off dates for their requests to other agencies are even earlier.

   2) A second option would be to move the start date for the searches back to February 4—the day after the District Court for the Western District of Washington issued a nationwide temporary restraining order concerning Executive Order 13769—or February 9—the day that the Ninth Circuit denied the government's motion to stay that order. Such a modification would be helpful if Ms. Currier is interested in focusing her requests on Executive Order 13780 now that Executive Order 13769 has been rescinded.

   3) Any combination of the above proposals (or any other date limitation) would be helpful.

C. *Exclude an agency's legal office from the scope of the search*. Agencies' legal offices may possess records responsive to Ms. Currier's requests. However, most of these records are likely to be exempt from disclosure (in full or in substantial part) pursuant to FOIA Exemption 5, which authorizes agencies to withhold information protected by the attorney-client privilege, deliberative process privilege, and attorney-work product protection, among other potential grounds for withholding. In addition, it seems unlikely that much (if any) responsive, non-exempt information from custodians in these offices could not be located through searches of the relevant programmatic offices. Ms. Currier has already agreed to exclude DOS's Office of the Legal Advisor from the scope of her requests. The other Defendants (with the exception of DOJ) ask that she do the same for them.

   If Ms. Currier is unwilling to accept this proposal, Defendants alternatively propose that the date ranges for any searches of their legal offices be modified to exclude periods of intensive litigation, during which the volume of communications containing attorney-work product might be at its peak. We can further discuss particular date ranges if Ms. Currier is interested in pursuing this alternative proposal.

D. *Agree to additional limits on which offices or custodians to include within the scope of agencies' searches/productions*. Although Defendants anticipate that any such agreement likely would be helpful, agreements regarding email searches may be particularly constructive.

E. *Concerning records related to communications between agency officials and members of Congress or congressional staffers, limit the requests to external communications between agencies and Congress.* This limitation would exclude internal correspondence (within or among agencies) about the substance and logistics of responding to congressional inquiries or congressional briefings, which would likely be deliberative and/or not of interest to Ms. Currier. (As a general matter, congressional correspondence may generate a significant amount of internal agency correspondence to coordinate the agency's response.) Agencies could focus their searches of their congressional affairs offices on inbound and outbound communications between the agencies and Congress.

## II. Agency-Specific Proposals

In addition to the global proposals described above, we made multiple agency-specific proposals during our August 30 meet and confer.

A. DOS

   1) We proposed an agreement that DOS would treat as non-responsive any records fully exempt from disclosure under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), which exempts records "pertaining to the issuance or refusal of visas or permits to enter the United States." You asked us whether Section 222(f) exempts only individual-specific records or whether it also exempts records describing policies that pertain to the issuance or refusal of visas or permits.

      DOS can now confirm that Section 222(f) does not apply to policies, only records that reveal information pertaining to the issuance or refusal of individual visas or permits to enter the United States.

   2) We proposed an agreement that DOS could treat as non-responsive (1) information that is already publicly available and (2) discrete parts of responsive records where those parts are not related to the Executive Orders. You asked us to clarify this proposal.

      DOS clarifies that media material about the Executive Order is the only responsive information in some documents. If media material is regarded as non-responsive, DOS would not have to review the other portions of those documents, which are often quite lengthy. Additionally, for records where the media material is the vast majority of the content, with only an "FYI" or overarching comment, DOS would like to view those records as non-responsive.

B. DHS-PRIV

   1) DHS-PRIV proposed that the parties work together to find a way to exclude litigation-related emails, if we are not able to accomplish that via one of the other proposals described above. For example, if Ms. Currier is not willing to agree to temporal limits that would exclude such material, or to exclude DHS's General

Counsel's Office altogether, the parties could agree to exclude litigation-related correspondence. This approach would be less efficient because separating litigation-related correspondence from other legal correspondence likely would require manual review, but it still would reduce the volume of such material that is deemed to be responsive and to require review for application of the statutory exemptions.

C. DHS-CBP

1) CBP understands that the requests for CBP records are focused on CBP headquarters. CBP would propose that its searches of email accounts be limited to email accounts of pivotal officials who were central to the agency's communication and decision making regarding the issues which are the subject of Ms. Currier's requests: the Commissioner; Chief of Staff; the Executive Director, Admissibility and Passenger Programs; the Deputy Executive Director, Admissibility and Passenger Programs; several email accounts from the Office of Congressional Affairs; and two email accounts (not specific to any individual) that were used as operational hubs for communications about the Executive Orders.

2) CBP proposed to exclude drafts of guidance on the Executive Orders from the scope of the requests. In any event, CBP anticipates that any such drafts would be withheld in full pursuant to Exemption 5.

Finally, in addition to the proposals previously discussed, Defendants ask Ms. Currier to review the records released to date by EOUSA. The remaining records located by EOUSA are similar in substance but cannot be released without consultation with one or more other agencies involved in this litigation. If the kinds of records that Ms. Currier has already received from EOUSA are of little interest to her, Defendants suggest that Ms. Currier consider dropping her request to EOUSA so that the other agencies can focus on processing their own records instead of the records sent by EOUSA for consultation.

**SCOPING AND PROCESSING AGREEMENTS REACHED/CONFIRMED DURING THE AUGUST 30 MEET AND CONFER**

As noted above, during our call on August 30, there were two points on which you were able to accept an agency's proposal or clarify a prior scoping agreement:

A. For <u>DOS</u>, you clarified that Ms. Currier does not want the agency to search any office not listed in your email of July 13, 2017. As a result, DOS will exclude from the scope of its search records from offices other than the following:
   1) Office of the Secretary
   2) Executive Secretariat
   3) Operations Center
   4) Policy Planning Staff
   5) Counselor of the Department
   6) Under Secretary for Civilian Security, Democracy, and Human Rights

7) Bureau of Conflict and Stabilization Operations
8) Bureau of Democracy, Human Rights, and Labor
9) Bureau of Population, Refugees, and Labor
10) Bureau of Consular Affairs
11) United States embassies and consulates in the following:
    i. Iran
    ii. Iraq
    iii. Syria
    iv. Sudan
    v. Yemen
    vi. Somalia
    vii. Libya

B. For <u>DOJ-OIP</u>, we explained that the Office of Public Affairs has located emails from some of its staff to reporters at some of the news organizations listed in part A.7 of the April 3 request to DOJ-OIP ("Breitbart News, Fox News, The Daily Caller, The Daily Wire, the Washington Times, or the Free Beacon"). We further explained that some of these emails include as-filed copies of briefs or court decisions as attachments to the email message. With respect to briefs and court decisions that were attached to multiple responsive email messages, we suggested that the agency produce a full copy of the attachment for the first transmittal and only the first page of the attachment for any additional transmittal(s), in addition to producing the email messages themselves (subject to any applicable exemptions). You accepted this proposal, which will somewhat reduce the volume of already-public information that the agency must process.

**MS. CURRIER'S PROPOSALS/AGREEMENTS FROM AUGUST 25 AND AUGUST 31**

In emails dated August 25 and 31, you stated that Ms. Currier would agree to two limitations on her requests and asked Defendants to "prioritize" or "de-prioritize" various categories of records.

<u>Limitations</u>

1. Most of Ms. Currier's requests seek communications "among [agency] personnel, including [various categories of personnel such as supervisors, officers, managers, and union representatives]" concerning the Executive Orders. You stated that Ms. Currier has agreed to limit "searches for records responsive to that item to email accounts of agency officials in a supervisory or managerial capacity."

This limitation apparently was based on a suggestion that we made on August 24, but as we discussed during our conference call, the limitation agreed upon in your email is different in a few respects from what we had in mind. First, our suggestion was to limit the search of email accounts to a smaller set of principals, not to the email accounts of managers and supervisors more broadly. Second, limiting the search to email accounts of supervisors and managers for *internal* correspondence but not for *external* correspondence reduces the effectiveness of the limitation because an agency may still need to search a non-supervisory or -managerial employee's email account in order to locate external communications, and may need to manually

review the records collected in order to determine which emails are internal and which are external. (It seems reasonable to assume that higher-level personnel would be copied on significant external communications, however.)

Defendants suggest further limitations along these lines and are prepared to discuss agency-specific limitations.

2. Regarding Ms. Currier's requests for records of communications between agencies and various non-profits and think tanks, you stated that "Ms. Currier is willing to limit the requests to specifically the Center for Immigration Studies, Federal for American Immigration Reform, the Center for Security Studies, the Heritage Foundation, and the Investigative Project on Terrorism." You also stated that, for DHS, Ms. Currier "is particularly interested in communications between those groups and the DHS Office of the Secretary, Office of Policy, Office of Intelligence and Analysis, Office of General Counsel, Office of Legislative Affairs, and Office of Public Affairs." And you indicated that you "will likely follow up with more information about specific offices in other agencies where [she] would like searches focused with respect to this item."

We explained on August 30 that Defendants appreciate Ms. Currier's elimination from the scope of her requests any non-profits and think tanks that are not actually identified in the requests. We also explained, however, that agencies may be unable to develop a reasonable search targeting communications with these entities without a basis for determining who, if anyone, at the agency likely engaged in such communications. Nevertheless, if records of communications with these entities about the Executive Orders are located by the agencies' searches, the agencies will treat them as responsive.

Prioritization

1. You indicated that Ms. Currier would like DOS to "prioritize" Part C of her requests to DOS, seeking "[r]ecords from the Dissent Channel related to the executive order[s]." DOS agrees and will prioritize its efforts to locate and process such records, to the extent they exist. However, DOS notes, as a general matter, that the existence, content, and authors of Dissent Channel messages are protected from unauthorized disclosure within DOS itself and that the internal safeguards protecting such information mean that it generally takes longer to collect and process such information for potential disclosure under the FOIA. DOS also notes that Dissent Channel messages, including the identity of the authors, are an extremely sensitive element in the internal deliberative process and are protected accordingly. *See* 2 FAM 071.1, 074.1(b), 075.1.

2. You stated in your August 25 email that "Ms. Currier would like to prioritize internal documents at all agencies about the design and effectiveness of the travel ban." During our meet and confer, we asked for clarification about what this request means and whether it is intended to exclude from the scope of the agencies' searches/productions any records that would otherwise be responsive to the requests as written. We also explained that agencies are not really able to "prioritize" records that cannot be isolated from other potentially responsive records without manual document-by-document review. We anticipate further discussions regarding Ms.

Currier's request that this category of records be prioritized, but we also suggest that Ms. Currier consider whether Defendants' scoping proposals could accomplish the goals of this request.

      3.      You also indicated that "Ms. Currier is willing to de-prioritize communications between agency officials and airports and commercial airlines." In addition, you indicated that she "is also willing to de-prioritize communications 'from or about travelers asking for clarification or about the ban's effect'" but that she "would like to prioritize documents *about* such requests, i.e., how the agencies responded or discussed responding to such inquiries."

      The agencies are willing to work with Ms. Currier to prioritize or de-prioritize categories of records that can be isolated from other potentially responsive records without manual document-by-document review. At this point, the agencies are not certain how they would be able to address Ms. Currier's interest in prioritizing or de-prioritizing these categories of records without conducting such a review.

      *    *    *

      I look forward to hearing back from you.

      Best,

      Matt Berns
      Trial Attorney



25 Taylor Street, San Francisco, CA 94102
+1 415.830.6664

September 25, 2017

**VIA EMAIL**

Matthew J. Berns
Trial Attorney
U.S. Department of Justice
Civil Division
20 Massachusetts Ave. NW
Washington, DC  20530

      RE:    *Currier v. DHS*, 3:17-cv-1799 (N.D. Cal.)

Dear Matt,

I am writing in response to your September 21 letter concerning our August 30 conference call and Defendants' proposals to modify or clarify the scope of Ms. Currier's FOIA requests.

I have had a series of discussions with my client about the Defendants' proposals, and am providing responses and comments about them below.

**DEFENDANTS' PENDING SCOPE PROPOSALS**

    **I.**    **Global Proposals**

        A.  *Focus the requests on specific parts of the executive orders.* Ms. Currier confirms that her requests are limited to records concerning the sections of the executive orders that temporarily suspended entry into the United States of certain persons from specific countries*, i.e.*, Section 3(c) of Executive Order 13769 and Section 2(c) of Executive Order 13780.

        B.  *Shorten the timeframes covered by the requests.* Ms. Currier agrees that the cut-off date for her April 3 requests will be March 16, *i.e.*, the intended effective date of Executive Order 13780. She does not wish to shorten the date range of her February 1 requests, though is willing to do so for particular offices (see paragraph I.C).

        C.  *Exclude the agencies' legal offices from the scope of the search.* Ms. Currier is not willing to exclude all agencies' legal offices from the scope of the search, but she agrees to narrow the time range for these offices to the intended implementation dates of the

executive orders, *i.e.*, January 27 for Executive Order 13769 and March 16 for Executive Order 13780.

D. *Agree to additional limits on which offices or custodians to include within the scope of agencies' searches/productions.* Ms. Currier agrees to no additional limits at this time.

E. *Concerning records related to communications between agency officials and members of Congress or congressional staffers, limit the requests to external communications between agencies and Congress.* Ms. Currier does not wish to limit this category further.

In addition to the above, Ms. Currier is willing to agree that any records that are already public may be treated as non-responsive by any agency, *e.g.*, news clips, publicly filed briefs, print-outs of webpages, press releases, the text of the executive orders, etc.

**II.  Agency-Specific Proposals**

A.  DOS

1) Ms. Currier is willing to agree that DOS may treat as non-responsive any records fully exempt from disclosure under Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).

2) Ms. Currier also agrees that DOS may treat as non-responsive information that is already publicly available. She is not willing to agree that media material will be treated as non-responsive unless it is already publicly available.

B. DHS-PRIV

As discussed in paragraph I.C., Ms. Currier agrees to narrow the time range for searches of records in all agencies' legal offices to the intended implementation dates of the executive orders, *i.e.*, January 27 for Executive Order 13769 and March 16 for Executive Order 13780.

C. DHS-CBP

1) Ms. Currier agrees to CBP's proposal that the agency may limit its searches of email accounts to those of the Commissioner; Chief of Staff; Executive Director, Admissibility and Passenger Programs; Deputy Executive Director, Admissibility and Passenger Programs; several email accounts from the Office of Congressional Affairs; and two email accounts that were used as operational hubs for communications about the executive orders.

2) Ms. Currier does not agree to exclude drafts of guidance on the executive orders from the scope of the requests, as these records may include segregable material.

   D. EOUSA

   Ms. Currier is not willing to drop her request to EOUSA.

   E. Additional Matters

   My notes indicate that we discussed a couple other agency-specific matters that I would like to follow up on.

   1) CBP asked if Ms. Currier would consider excluding from the scope of her requests certain records reflecting communications between CBP and airlines, and we agreed that you would send me some samples of these records to help Ms. Currier decide whether to do so. To date, we have not received those sample documents, but Ms. Currier will review them once they are sent.

   2) OLC proposed that Ms. Currier consider excluding from the scope of her requests correspondence between OLC and litigating components of DOJ. Ms. Currier agrees to this modification.

**SCOPING AND PROCESSING AGREEMENTS REACHED/CONFIRMED DURING THE AUGUST 30 MEET AND CONFER**

I confirm that Ms. Currier has agreed to narrow her requests on these points.

**MS. CURRIER'S PROPOSALS AGREEMENTS FROM AUGUST 25 AND AUGUST 31**

<u>Limitations</u>

In addition to the limitation agreed to above in II.C.1, Ms. Currier agrees to continue discussing agency-specific limitations restrict searches for records to email accounts of high-level agency personnel.

<u>Prioritization</u>

Ms. Currier is happy to continue discussions on these matters.

Please let me know if you have any questions or concerns. I look forward to continuing our discussions.

            Regards,

            Marcia Hofmann